797 A.2d 839

**Edwin Gibbons MOORE, III**

v.

**Suzanne Gibbs MOORE.**

**No. 1128, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

May 6, 2002.

292

Jon W. Sargent (Greenberg, Felsen & Sargent, LLC, on brief) Rockville, for appellant.

Bruce M. Bender (Samuel D. Williamowsky and Van Grack, Axelson & Williamowsky, P.C., on brief) Rockville, for appellee.

Argued before HOLLANDER, DEBORAH S. EYLER, JAMES S. GETTY, (Retired, Specially Assigned) JJ.

HOLLANDER, J.

This case requires us to construe a provision in a marital separation agreement with respect to the husband's alimony obligation. We must determine whether the provision obligating Edwin Gibbons Moore, III, appellant, to pay alimony to

Suzanne Gibbs Moore, appellee, terminated upon appellee's remarriage, when the agreement expressly specified that alimony was "non-modifiable" and payable for a fixed term, but did not expressly state that it would continue upon appellee's remarriage.

The parties were divorced on March 13, 2000, in the Circuit Court for Montgomery County. In connection with the divorce proceeding, they executed a Voluntary Separation and Property Settlement Agreement ("Separation Agreement" or "Agreement"), dated March 2, 2000, which was incorporated but not merged into the Judgment of Absolute Divorce. A few months later, on September 2, 2000, appellee remarried. As a result, appellant immediately ceased his alimony payments. Consequently, in January 2001, appellee filed a "Request for Entry of Money Judgment," to recover the unpaid alimony and attorney's fees. The court granted appellee's request on June 28, 2001, and entered judgment against appellant for $8333.33, a sum equal to the alimony arrearages. The court subsequently awarded appellee attorney's fees of $750 on August 20, 2001.

Appellant timely noted his appeal and presents two issues for our review:

I. Whether the Appellant's obligation to pay alimony terminated when the Appellee remarried under the terms of the parties' Agreement and Family Law Article Section 11–108?

II. Whether the trial court was clearly erroneous and/or abused its discretion by awarding counsel fees?

For the reasons that follow, we answer question one in the negative and question two in the affirmative.

## FACTUAL SUMMARY[1]

The circuit court executed a Judgment of Absolute Divorce on March 3, 2000, which was docketed on March 13, 2000,

---

1. Pursuant to Rule 8–413(b), the parties have proceeded here by way of an agreed statement of the case.

granting appellee a divorce from appellant. As noted, the parties' Separation Agreement of March 2, 2000, was incorporated but not merged into the divorce decree. The Separation Agreement provided, in relevant part:

8.0 *ALIMONY*

8.1 The husband shall pay to the wife *non-modifiable* alimony in the amount of $833.33 per month commencing on April 1, 2000 and payable on the 1st day of each month thereafter *for eighty-four consecutive months or until the payment due on April 1, 2000?* [sic].

The parties expressly covenant and agree pursuant to Section 8–101 through Section 8–103 of the Family Law Article Annotated Code of Maryland, that *no court shall have the power to modify this agreement with respect to alimony, support or maintenance of either spouse except as provided herein.*

(Emphasis added).

After appellee remarried on September 2, 2000, appellant immediately ceased payment of alimony. Accordingly, appellee sought to recover a money judgment against appellant, equal to his arrearages, plus attorney's fees. By Order of June 28, 2001, the court entered judgment against appellant for $8,333.33, representing the amount of accumulated alimony arrearages.

By Order of August 20, 2001, the court also awarded appellee attorney's fees in the amount of $750.00. In their Agreed Statement of the Case, the parties state that the court awarded attorney's fees "based solely upon the amount requested by Appellee's counsel over the Appellant's objection."

## DISCUSSION

### I.

We begin our analysis with a review of the relevant statutory provisions contained in the Family Law Article of the Maryland Code (1984, 1999 Repl.Vol.).

Title 11 of the Family Law Article concerns alimony. F.L. § 11–101 provides, in part:

### § 11–101. Award—In general.

\* \* \*

(c) *Effect of agreement.*—If a final disposition as to alimony has been made in an agreement between the parties, the court is bound by that agreement as the agreement relates to alimony.

F.L. § 11–107 is also pertinent. It states, in part:

### § 11–107. Extension of period; modification of amount.

\* \* \*

(b) *Modification of amount.—Subject to § 8–103 of this article and on the petition of either party, the court may modify the amount of alimony awarded as circumstances and justice require.*

(Emphasis added).

F.L. § 11–108, central to appellant's position, provides:

### § 11–108. Termination of alimony.

*Unless the parties agree otherwise,* alimony terminates:

(1) on the death of either party;

(2) on the marriage of the recipient; or

(3) if the court finds that termination is necessary to avoid a harsh and inequitable result.

(Emphasis added).

Title 8 of the Family Law Article pertains to deeds, agreements, and settlements between spouses, as well as matters pertaining to disposition of property. F.L. § 8–103(c) provides:

### § 8–103. Modification of deed, agreement, or settlement.

\* \* \*

(c) *Certain exceptions for provisions concerning alimony or support of spouse.*

The court may modify any provision of a deed, agreement, or settlement with respect to alimony or spousal support executed on or after April 13, 1976, regardless of how the provision is stated, unless there is:

(1) an express waiver of alimony or spousal support; or

(2) *a provision that specifically states that the provisions with respect to alimony or spousal support are not subject to any court modification.*

(Emphasis added).

F.L. § 8–105 is also pertinent. It states:

**§ 8–105. Power of court to enforce or modify provisions.**

(a) *Enforcement by power of contempt.*—(1) The court may enforce by power of contempt the provisions of a deed, agreement, or settlement that are merged into a divorce decree.

(2) The court may enforce by power of contempt or as an independent contract not superseded by the divorce decree the provisions of a deed, agreement, or settlement that contain language that the deed, agreement, or settlement is incorporated but not merged into a divorce decree.

(b) *Modification.*—The court may modify any provision of a deed, agreement, or settlement that is:

(1) incorporated, whether or not merged, into a divorce decree; and

(2) *subject to modification under § 8–103 of this subtitle.*

(Emphasis added).

## II.

Appellant asserts that the "express terms of Family Law Article Section 11–108 require the termination of alimony upon the recipient's remarriage, unless 'the parties otherwise agree'. . . ." He contends that his contractual obligation to pay alimony to appellee ceased upon appellee's remarriage, be-

cause the parties did not agree otherwise in their Separation Agreement. In his view, "the complete silence of the Agreement regarding the effect of the Appellee's remarriage on alimony ... is a failure of the parties to 'agree otherwise' and requires termination [under F.L. § 11–108] of the Appellant's obligation to pay alimony." He adds: "The parties did not have to expressly agree that alimony terminates upon remarriage for the remarriage of the recipient to cause a termination of alimony under the terms of [F.L.] Section 11–108." Put another way, appellant maintains that the failure of the parties expressly to provide that alimony shall continue in the event of appellee's remarriage necessarily means that the alimony obligation terminated when appellee remarried.

Appellant also argues that F.L. § 8–103 is not applicable to the case *sub judice,* because it pertains only to modification of alimony, and not termination of alimony upon remarriage, which is governed by F.L. § 11–108. He considers it significant that F.L. § 11–107, concerning modification of the amount of alimony, refers to F.L. § 8–103, while F.L. § 11–108, concerning termination of alimony, does not refer to F.L. § 8–103. Thus, he argues:

> Termination of alimony for death or remarriage is not a modification because Family Law Article Section 11–108 makes no reference to Family Law Article Section 8–103.[ ] As a result, the unambiguous language of that code section without limitation to Family Law Article Section 8–103 means that termination due to remarriage is mandated "[u]nless the parties agree otherwise." The non-modifiability clause in the parties' Agreement is irrelevant to the termination caused by the Appellee's remarriage.

Conversely, relying on F.L. §§ 8–103(c), 8–105(c)(2), and 11–107, appellee maintains that her remarriage did not entitle appellant to terminate his alimony payments. She observes that the Agreement expressly provided that appellant's alimony obligation was "non-modifiable," and expressly stated that no court could alter the terms of alimony. In addition, it specified a precise date on which alimony payments are to end. Moreover, even if appellant's argument as to F.L. § 11–

108 were generally correct, she contends that the parties have, indeed, "agreed otherwise," because they agreed that appellant's alimony obligation is non-modifiable.

Because the case involves the interplay of various statutory provisions and contractual terms, principles of both contract and statutory construction are important. We turn first to consider the principles of statutory construction.

A " 'cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature.' " *Degren v. State,* 352 Md. 400, 417, 722 A.2d 887 (1999)(quoting *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423 (1995)); *see State v. Green,* 367 Md. 61, 81, 785 A.2d 1275 (2001); *Webster v. State,* 359 Md. 465, 479, 754 A.2d 1004 (2000). " 'The primary source of legislative intent is ... the language of the statute itself.' " *State v. Pagano,* 341 Md. 129, 133, 669 A.2d 1339 (1996) (citation omitted); *see Adamson v. Correctional Med. Servs.,* 359 Md. 238, 251, 753 A.2d 501 (2000); *Huffman v. State,* 356 Md. 622, 628, 741 A.2d 1088 (1999). In this regard, we give the words of a statute "their ordinary and natural meaning." *Whack v. State,* 338 Md. 665, 672, 659 A.2d 1347 (1995); *see Lewis v. State,* 348 Md. 648, 653, 705 A.2d 1128 (1998). When "the General Assembly has enacted an unambiguous statute, we cannot, and will not, divine a legislative intention contrary to the plain language of a statute or judicially insert language to impose exceptions, limitations or restrictions not set forth by the legislature." *Langston v. Langston,* 366 Md. 490, 515, 784 A.2d 1086 (2001). To the contrary, "if the plain meaning of the statutory language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end." *Breitenbach v. N.B. Handy Co.,* 366 Md. 467, 473, 784 A.2d 569 (2001).

Thus, "[w]e neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in a forced or subtle interpretation in an attempt to extend or limit the statute's

meaning." *Taylor v. Nationsbank,* 365 Md. 166, 181, 776 A.2d 645 (2001); *see Mid–Atlantic Power Supply Assoc. v. Public Service Comm'n of Md.,* 361 Md. 196, 203–04, 760 A.2d 1087 (2000) (recognizing that "we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in a forced or subtle interpretation in an attempt to extend or limit the statute's meaning"). Indeed, so long as "the language [of a statute] is clear and unambiguous, there is usually no need to look further." *Gary v. State,* 341 Md. 513, 521, 671 A.2d 495 (1996); *see Adamson,* 359 Md. at 251, 753 A.2d 501. But, the plain meaning rule is "elastic, rather than cast in stone[,]" and if "persuasive evidence exists outside the plain text of the statute, we do not turn a blind eye to it." *Adamson,* 359 Md. at 251, 753 A.2d 501 (citing *Kaczorowski v. Mayor of Baltimore,* 309 Md. 505, 513–14, 525 A.2d 628 (1987)).

Therefore, "in determining a statute's meaning, courts may consider the context in which a statute appears, including related statutes and legislative history." *Ridge Heating, Air Conditioning & Plumbing v. Brennen,* 366 Md. 336, 350–51, 783 A.2d 691 (2001). "We may also consider the particular problem or problems the legislature was addressing, and the objectives it sought to attain." *Sinai Hosp. of Baltimore v. Dep't of Employment and Training,* 309 Md. 28, 40, 522 A.2d 382 (1987). "This enables us to put the statute in controversy in its proper context and thereby avoid unreasonable or illogical results that defy common sense." *Adamson,* 359 Md. at 252, 753 A.2d 501.

Of significance here, we are required to construe statutory provisions as a whole, so that all provisions are considered together and, to the extent possible, reconciled and harmonized. *Curran v. Price,* 334 Md. 149, 172, 638 A.2d 93 (1994). In *Office of People's Counsel v. Maryland PSC,* 355 Md. 1, 733 A.2d 996 (1999), the Court said:

> We are ... required to interpret the statute as a whole, for '[w]here the statute to be construed is a part of a statutory scheme, the legislative intention is not determined

from that statute alone, rather it is to be discerned by considering it in light of the statutory scheme.' Moreover, neither the words in the statute nor any portion of the statutory scheme should be read 'so as to render the other, or any portion of it, meaningless, surplusage, superfluous, or nugatory.'

*Id.* at 22, 733 A.2d 996 (quoting *Government Employees Ins. Co. v. Insurance Com'r,* 332 Md. 124, 132, 630 A.2d 713 (1993)); *see Montgomery County v. Buckman,* 333 Md. 516, 523–524, 636 A.2d 448 (1994).

It is also well settled that, when construing various provisions of a statute that involve the same subject matter, a harmonious interpretation of the statutes is "strongly favor[ed]." *Maryland State Police v. Warwick Supply & Equip. Co.,* 330 Md. 474, 483–84, 624 A.2d 1238 (1993); *see Department of Natural Resources v. France,* 277 Md. 432, 461, 357 A.2d 78 (1976)(stating that, "[w]here two statutory provisions are neither irreconcilable nor mutually repugnant, they should be construed in harmony with their respective objects and tenor") (citations omitted). It is noteworthy here that a statutory provision should not be viewed in isolation. Rather, "[a]ll relevant parts . . . should be read together and, to the extent possible, construed in harmony." *Curry v. Dept. of Public Safety & Correctional Servs.,* 102 Md.App. 620, 628, 651 A.2d 390 (1994), *cert. dismissed,* 340 Md. 175, 665 A.2d 1038 (1995).

■ In addition, when two provisions, one general and the other specific, appear to cover the same subject but seem to conflict, the specific provision is controlling, and prevails over the general enactment. *France,* 277 Md. at 461–62, 357 A.2d 78 (" 'Where there is a specific enactment and a general enactment which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment.' ") (citation omitted; internal quotations omitted). In other

words, when reconciling a specific and a general provision of a statute, a court should give effect to the specific provision in its entirety, while retaining as much of the general provision as is reasonably possible. *See* 1A NORMAN L. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION §§ 23.06, 23.09, 23.16 (5th ed.1993); *see also Farmers & Merchants National Bank of Hagerstown v. Schlossberg,* 306 Md. 48, 63, 507 A.2d 172 (1986)(holding general enactment impliedly repealed by specific enactment); *Lumbermen's Mutual Casualty Co. v. Insurance Comm'r.,* 302 Md. 248, 268, 487 A.2d 271 (1985)("[W]here one statutory provision specifically addresses a matter, and another more general statutory provision also may arguably cover the same matter, the specific statutory provision is held to be applicable and the general provision is deemed inapplicable."); *Criminal Injuries Comp. Bd. v. Gould,* 273 Md. 486, 495, 331 A.2d 55 (1975).

When the parties reach an agreement as to alimony, the statutory scheme is quite clear in emphasizing the significance of the parties' agreement. As has been noted, "unless the parties agree otherwise," F.L. § 11–108(2) provides for the termination of alimony upon "the marriage of the recipient." Moreover, F.L. § 8–103(c) limits the right of the court to modify an agreement of the parties with respect to alimony. Additionally, under F.L. § 8–105 and F.L. § 11–107, a court may modify the terms of an alimony agreement, subject to the limitations of F.L. § 8–103.

In *Langston,* 366 Md. at 503, 784 A.2d 1086, which concerned retroactive modification of alimony, the Court noted the statutory significance of an agreement between the parties pertaining to alimony. There, the Court recognized that F.L. § 11–101(c) "mandates that the court is bound by the terms of a separation agreement entered into by the parties …," adding that the statute permits "parties to customize their separation agreements to suit best their personal needs and circumstances." *Id.* Further, the *Langston* Court characterized F.L. § 8–103(c) as "an additional restriction upon the general rule that allows a court to modify" alimony. *Id.*

Therefore, we turn to consider the terms of the parties' Separation Agreement in light of the overall statutory scheme.

 "Maryland has long recognized and enforced spousal support agreements." *Campitelli v. Johnston,* 134 Md.App. 689, 696, 761 A.2d 369 (2000), *cert. denied,* 363 Md. 206, 768 A.2d 54 (2001); *see Gordon v. Gordon,* 342 Md. 294, 300, 675 A.2d 540 (1996). As the *Gordon* Court said: "The prevailing view is now that 'separation agreements ... are generally favored by the courts as a peaceful means of terminating marital strife and discord so long as they are not contrary to public policy.' " *Id.* at 300–01, 675 A.2d 540 (quoting 5 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 11:7, at 396–99 (R. Lord ed., 4th ed.1993)). Accordingly, the provisions of a separation agreement that are incorporated but not merged into a divorce decree may be enforced as an independent contract. *Schneider v. Schneider,* 335 Md. 500, 516, 644 A.2d 510 (1994); *see* F.L. § 8–105(a)(2); *see also* J. FADER & R. GILBERT, MARYLAND FAMILY LAW § 13–8 (2nd ed.1995). This means that the Separation Agreement is subject to the same general rules of construction applicable to other contracts. *Bruce v. Dyer,* 309 Md. 421, 433, 524 A.2d 777 (1987); *Goldberg v. Goldberg,* 290 Md. 204, 212, 428 A.2d 469 (1981); *Monticello v. Monticello,* 271 Md. 168, 173, 315 A.2d 520, *cert. denied,* 419 U.S. 880, 95 S.Ct. 145, 42 L.Ed.2d 121 (1974) (the objective law of contracts shall govern the construction and interpretation of separation agreements); *Heinmuller v. Heinmuller,* 257 Md. 672, 676, 264 A.2d 847 (1970) (a separation agreement is subject to the same general rules governing other contracts); *Mendelson v. Mendelson,* 75 Md.App. 486, 501, 541 A.2d 1331 (1988)("Interpreting the Separation Agreement is a question of contract law.").

 The construction of a written contract is a question of law, subject to *de novo* review by an appellate court. *Langston,* 366 Md. at 505–06, 784 A.2d 1086; *Auction & Estate Representatives, Inc. v. Ashton,* 354 Md. 333, 341, 731 A.2d 441 (1999); *JBG/Twinbrook Metro Ltd. v. Wheeler,* 346 Md. 601, 625, 697 A.2d 898 (1997); *Nationwide Insurance*

*Companies v. Rhodes,* 127 Md.App. 231, 732 A.2d 388 (1999). As a fundamental principle of contract construction, we seek to ascertain and effectuate the intention of the contracting parties. *Society of Am. Foresters v. Renewable Natural Resources Found.,* 114 Md.App. 224, 234, 689 A.2d 662 (1997); *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship,* 109 Md.App. 217, 290–91, 674 A.2d 106 (1996), *aff'd,* 346 Md. 122, 695 A.2d 153 (1997). Moreover, "the primary source for determining the intention of the parties is the language of the contract itself." *Hartford Accident & Indem.,* 109 Md.App. at 290–91, 674 A.2d 106. In this regard, contracts are interpreted "as a whole to determine the parties' intentions." *Sullins v. Allstate Ins. Co.,* 340 Md. 503, 508, 667 A.2d 617 (1995). Moreover, the terms of the agreement are construed consistent with their usual and ordinary meaning, unless it is apparent that the parties ascribed a special or technical meaning to the words. *See Fister v. Allstate Life Ins. Co.,* 366 Md. 201, 210, 783 A.2d 194 (2001); *Cheney v. Bell Nat'l Life Ins. Co.,* 315 Md. 761, 766, 556 A.2d 1135 (1989).

In ascertaining the parties' intent, Maryland follows the objective law of contract interpretation. *See Taylor v. NationsBank, N.A.,* 365 Md. 166, 178, 776 A.2d 645 (2001); *B & P Enterprises v. Overland Equip. Co.,* 133 Md.App. 583, 604, 758 A.2d 1026 (2000). Under this doctrine, when a contract is clear and unambiguous, "its construction is for the court to determine." *Wells v. Chevy Chase Bank, F.S.B.,* 363 Md. 232, 251, 768 A.2d 620 (2001) (citation omitted). Moreover, the court is required to "give effect to [the contract's] plain meaning," without regard to what the parties to the contract thought it meant or intended it to mean. *Wells,* 363 Md. at 251, 768 A.2d 620; *see PaineWebber Inc. v. East,* 363 Md. 408, 414, 768 A.2d 1029 (2001); *Ashton,* 354 Md. at 340–41, 731 A.2d 441; *Calomiris v. Woods,* 353 Md. 425, 436, 727 A.2d 358 (1999). Put another way, the " 'test of what is meant is ... what a reasonable person in the position of the parties would have thought' the contract meant." *Society of Am. Foresters,* 114 Md.App. at 234, 689 A.2d 662 (citation omitted).

Generally, "it must be presumed that the parties meant what they expressed." *PaineWebber Inc.*, 363 Md. at 414, 768 A.2d 1029; *see Jones v. Hubbard*, 356 Md. 513, 533, 740 A.2d 1004 (1999). " 'If only one reasonable meaning can be ascribed to the [contract] when viewed in context, that meaning necessarily reflects the parties' intent.' " *Labor Ready v. Abis*, 137 Md.App. 116, 128, 767 A.2d 936 (2001) (citation omitted). Of particular significance here, "the parties to an agreement are deemed to have contracted with knowledge of existing law. . . ." *Heyda v. Heyda*, 94 Md.App. 91, 98, 615 A.2d 1218 (1992).

Whether a contract is ambiguous is a threshold question of law, not fact, which is subject to *de novo* review by an appellate court. *Calomiris*, 353 Md. at 434, 727 A.2d 358. Contractual language is considered ambiguous when the words in it are susceptible of more than one meaning to a reasonably prudent person. *Ashton*, 354 Md. at 340, 731 A.2d 441; *Calomiris*, 353 Md. at 436, 727 A.2d 358; *Davis v. Magee*, 140 Md.App. 635, 650, 782 A.2d 351 (2001). A contract is not ambiguous, however, merely because the parties to it do not agree as to its meaning. *Fultz v. Shaffer*, 111 Md.App. 278, 299, 681 A.2d 568 (1996). To determine whether contractual language is susceptible of more than one meaning, the court should consider "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of the execution." *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486 (1985).

Nevertheless, it is not the province of the court to rewrite an agreement between the parties, in order to rectify an ambiguity. *See Bailer v. Erie Ins. Exchange*, 344 Md. 515, 539, 687 A.2d 1375 (1997). Nor may the court rewrite the terms of a contract so as to avoid hardship to a party, or because one party has become dissatisfied with its terms. *See Canaras v. Lift Truck Services, Inc.*, 272 Md. 337, 350, 322 A.2d 866 (1974); *Fultz*, 111 Md.App. at 298, 681 A.2d 568.

When a contract is found ambiguous by the trial court, the trial court may receive parol evidence to clarify its

meaning. *Bushey v. Northern Assurance,* 362 Md. 626, 632, 766 A.2d 598 (2001); *Sullins,* 340 Md. at 508, 667 A.2d 617. If the appellate court agrees with the trial court's finding of ambiguity, "it will apply a clearly erroneous standard to the trial court's assessment of the construction of the contract in light of the parol evidence received." *Calomiris,* 353 Md. at 435, 727 A.2d 358.

In *Campitelli,* 134 Md.App. 689, 761 A.2d 369, the Court considered whether a provision in a separation agreement violated public policy, because it expressly obligated the husband to pay spousal support until the death of his former wife, despite her remarriage. As a matter of public policy, the Court established that parties to a separation agreement may provide for the ongoing payment of alimony despite the remarriage of the payee spouse. We said, at 134 Md.App. at 698, 761 A.2d 369:

> The Maryland General Assembly specifically left room for parties to create their own contracts according to their own unique situations. We see no reason not to apply the general policy upholding freedom to contract. We discern no "clear and unequivocal" public policy against the payment of spousal support after the remarriage of the recipient spouse. We decline to find that separation agreements that require the continued payment of spousal support after the remarriage of the recipient spouse are void as against public policy.

 Appellant seeks to distinguish *Campitelli,* claiming that, unlike in that case, the case *sub judice* does not involve an express agreement to continue alimony in the event of remarriage. Absent such language, appellant argues that no such provision can be created. Thus, he relies on what he regards as the "complete silence [in] the Agreement regarding the effect of the Appellee's remarriage on alimony...."

We reject appellant's effort to characterize the Agreement as "silent" on the matter of alimony in the event of remarriage. To be sure, there are no scripts to be followed in crafting a separation agreement, nor a litmus test that we can

discern as to the precise language that must be used to create a binding agreement to continue alimony payments upon the payee spouse's remarriage. Although it might have been preferable in this case if the parties had included text in their Agreement that specifically addressed the matter of alimony upon remarriage, the absence of such language does not compel the conclusion that the parties agreed to terminate alimony upon appellee's remarriage. Moreover, neither party has suggested that the Agreement is ambiguous, nor do we regard it as unclear. To the contrary, applying the basic precepts of contract construction to the statutory scheme, we are satisfied that the Agreement leaves no doubt as to the obligor spouse's continued duty to pay alimony, despite the obligee spouse's remarriage. We explain.

As we observed, the Agreement expressly provides that appellant's alimony obligation is "non-modifiable." In our view, the word "non-modifiable" was not chosen by coincidence; it is consistent with the concept of modification of alimony that is evident in the statutory scheme. Indeed, the statute is replete with references to when the court may or may not make a "modification" of alimony. Moreover, as we noted, parties to a contract are considered to have drawn their agreement with knowledge of the existing law.

Additionally, in deciding the plain meaning of a statutory or contract term, we may consult the dictionary. *See Rouse–Fairwood Limited Partnership v. Supervisor of Assessments,* 120 Md.App. 667, 687, 708 A.2d 19 (1998). The dictionary definitions of the term "modify" include "to undergo change." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 748 (10th ed.1997). The word "modification" is defined, *inter alia,* as "the making of a limited change in something." *Id.* Extrapolating from these definitions, it is evident that the term "non-modifiable" means that, under the Separation Agreement, appellant's alimony obligation is not subject to change. That view is consistent with other language in the alimony section of the Separation Agreement, which expressly provides that "no court shall have the power to modify this agreement with respect to alimony...." That language is certainly clear, and

corresponds with the spirit and text of the statutory scheme, which permits parties to contract freely with regard to alimony. It is also significant that the Separation Agreement provides the exact date—April 1, 2007—through which alimony payments are to be made, without specifying any contingencies.

As we see it, then, the parties were anything but silent as to appellant's alimony obligation. Given that the parties expressly agreed that the alimony obligation is non-modifiable, that no court has the power to modify the Agreement with respect to alimony, and alimony is payable until a particular date specified in the Agreement, we have no difficulty in concluding that the Separation Agreement obligates appellant to continue to pay alimony to appellee, despite her remarriage. When the parties agreed that alimony is non-modifiable by the court and payable to a date certain, they agreed that appellant's alimony obligation would continue until the specified expiration date; that obligation was not made contingent upon appellee's continued status as a single woman.

We are also unpersuaded by appellant's claim that the termination of alimony, governed by F.L. § 11–108, is not the same as, and does not amount to, a modification of alimony. Rather, we agree with appellee that termination of alimony is merely a type of modification of alimony. Indeed, Maryland cases reflect that the two terms are often used interchangeably. *See, e.g., Bauer v. Votta,* 104 Md.App. 565, 568, 657 A.2d 358 (1995) (involving petition for modification of alimony, seeking either termination or reduction of alimony).

Even if appellant were correct in his claim that termination of alimony is not the same as a modification of alimony, appellant's position would fare no better. As a matter of public policy, the parties were entitled to contract for the continuation of alimony, despite appellee's remarriage. Moreover, as appellant concedes, F.L. § 11–108 provides for termination of alimony upon remarriage of the recipient spouse, "unless the parties agree otherwise." By making alimony non-modifiable, not subject to alteration by the court, and

payable until a date certain, the parties did agree otherwise, within the meaning of F.L. § 11–108.

Appellant's tortured construction of the Separation Agreement flies in the face of the statutory scheme and the well settled principles of contract construction. Therefore, in accordance with the established laws of contractual and statutory construction, we hold that the Separation Agreement provides for the continued payment of alimony by appellant, notwithstanding appellee's remarriage.

## III.

Appellant complains that the circuit court erred in authorizing an award of counsel fees to appellee of $750. He argues that in this case attorney's fees are not recoverable absent statutory authority, contractual provision, or the application of Md. Rule 1–341. Moreover, he claims that the Separation Agreement does not authorize counsel fees, nor does the statutory scheme "provide authority for the Court to award attorney's fees when seeking enforcement of the parties' Agreement."

 Maryland law clearly establishes that attorney's fees may not be recovered absent an express contractual provision, statutory authority, or the application of Md. Rule 1–341. *Campitelli*, 134 Md.App. at 699, 761 A.2d 369; *see Lebac v. Lebac*, 109 Md.App. 396, 409, 675 A.2d 131 (1996). Appellee concedes that neither the Agreement nor the statute permits the recovery of attorney's fees in this case.

F.L. § 11–110 provides, in relevant part:

**§ 11–110. Order to pay reasonable and necessary expenses.**

\* \* \*

(b) *Authority of court.*—At any point in a proceeding under this title, the court may order either party to pay to the other party an amount for the reasonable and necessary expense of prosecuting or defending the proceeding.

The notes to this section provide:

**Not applicable to enforcement of separation agreements.**—This section only applies to proceedings for alimony, alimony pendente lite, and the enforcement of an award of alimony; thus, in a case dealing only with the enforcement of a separation agreement, a former spouse was not entitled to attorney's fees.

■ Nevertheless, appellee maintains that the award of attorney's fees was proper under Md. Rule 1–341, which authorizes an award of attorney's fees if the court finds that a party acted in bad faith. We disagree.

■ In making an award of attorney's fees under Md. Rule 1–341, the court must make two separate findings:

First, the judge must find that the proceeding was maintained or defended in bad faith and/or without substantial justification. This finding will be affirmed unless it is clearly erroneous or involves an erroneous application of law. Second, the judge must find that the bad faith and/or lack of substantial justification merits assessment of costs and/or attorney's fees. This finding will be affirmed unless it was an abuse of discretion.

*Claibourne v. Willis,* 347 Md. 684, 694, 702 A.2d 293 (1997) (citing *Inlet Assoc. v. Harrison Inn Inlet, Inc.,* 324 Md. 254, 267–68, 596 A.2d 1049 (1991)). "The record must reflect that the trial judge made the requisite findings, as well as the basis for those findings." *Zdravkovich v. Bell Atlantic–Tricon Leasing Corp.,* 323 Md. 200, 210, 592 A.2d 498 (1991). *See also Talley v. Talley,* 317 Md. 428, 436, 564 A.2d 777 (1989).

Appellee did not assert below that appellant acted in bad faith, nor did she seek attorney's fees on that basis. Moreover, the circuit court made no finding of bad faith as to appellant, and there is no basis to find that it awarded attorney's fees for that reason. Therefore, the court had no basis on which to award attorney's fees, and it erred in doing so. *Campitelli,* 134 Md.App. at 701, 761 A.2d 369. Appellee cannot resurrect her claim for attorney's fees based on her after-the-fact assertion of bad faith.

JUDGMENT AWARDING ATTORNEY'S FEES TO AP-
PELLEE REVERSED; JUDGMENT OF THE CIRCUIT
COURT FOR MONTGOMERY COUNTY OTHERWISE
AFFIRMED. COSTS TO BE PAID 25% BY APPELLEE,
75% BY APPELLANT.