632 A.2d 202

Alfred J. PLEASANT

v.

Diana E. PLEASANT.

No. 1840, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Oct. 27, 1993.

Linda M. Hamilton, Landover, for appellant.

Barbara J. Gorinson (Patricia E. Gearity and Joseph, Greenwald & Laake, P.A. on the brief), Greenbelt, for appellee.

Argued before MOYLAN, BLOOM and WENNER, JJ.

WENNER, Judge.

Appellant, Alfred J. Pleasant, has appealed from a judgment of the Circuit Court for Prince George's County granting appellee, Diana Marie Eugene, formerly Diana E. Pleasant, an absolute divorce, giving her a monetary award, and sanctioning appellant.

Unhappy with the monetary award and sanctions, appellant noted this appeal. As the questions he has presented us with do not precisely reflect his contentions, we have rephrased them as follows:

I. The trial court erred by failing to consider appellee's contribution to Social Security as marital property.

II. The trial court erred by transferring title of the marital personal property, rather than ordering a sale and distribution of the proceeds of sale.

III. The trial court erred in its valuation of appellant's real estate business.

IV. The trial court erred by requiring appellant to provide a former spouse survivor benefit in relation to its award of an interest in appellant's pension to appellee.

V. The trial court abused its discretion in presenting appellant with what he has termed "ultimatums" regarding the method by which appellee would receive the awarded share of appellant's pension.

VI. The trial court erred in imposing sanctions for appellant's failure during discovery to produce tax and pension documentation in a timely manner.

For the reasons we shall hereafter elucidate, we shall vacate that portion of the judgment granting appellee a monetary award and dividing the pension benefits, affirm the remainder of the judgment, and remand the case to the circuit court for further proceedings consistent with this opinion.

### *Facts*

The parties were married in New Orleans, Louisiana, on June 2, 1979. Until they separated in April of 1986, they lived in Prince George's County, Maryland, in a home purchased by appellant before they were married. At the time of the

divorce, the primary marital assets were partial interests in the home, appellant's government pension, automobiles, bank accounts, a real estate brokerage firm begun by appellant during the marriage, and a relatively small amount of household furnishings. Inasmuch as they were unable to reach a settlement, the parties asked the circuit court to divide this property.

The trial judge determined the following to be marital property:

| Pensions | Value |
| --- | --- |
| Alfred Pleasant | $167,907 |
| Diana Pleasant | 12,023 |
| | $179,930 |

| Property | Value | Titling/Possession [1] |
| --- | --- | --- |
| House | $ 77,298 | Husband |
| Jaguar | 13,675 | Husband |
| Excalibur | 6,000 | Husband |
| Bolling AFB CU | 431 | Husband |
| Crestar | 505 | Husband |
| DC Teachers FCU | 10,717 | Husband |
| DC Teachers IRA | 3,130 | Husband |
| Citizens Bank | 210 | Husband |
| Citizens Bank | 217 | Wife |
| Cressida | 4,425 | Wife |
| Alfred Pleasant & Assoc. | 8,000 | Husband |
| Business checking account | 250 | Husband |
| Sleep sofa | 75 | Husband |
| Freezer | 50 | Husband |
| Night stand | 20 | Husband |
| Dining room set | 3,000 | Husband |
| Television | 200 | Husband |
| Sewing machine | 200 | Wife |
| Mixer | 150 | Husband |
| Crystal | 100 | Husband |
| Silverware | 200 | Husband |
| Wedgewood serving set | 200 | Husband |
| Microwave | 200 | Husband |
| | $129,226 [2] | |

1. The S–74 was headed "How Titled/Possession." The significance of this designation will become apparent.

2. The actual total is $129,253, a difference of $27.00. For consistency, the trial judge's figures will be used.

The trial judge then determined that an equal division was equitable. Based upon expert testimony, appellee was awarded 16.9% of appellant's pension if, as, and when received by him, and appellant was ordered to provide appellee with a survivor's benefit annuity to guarantee appellee's receipt of pension payments after appellant's death. The trial judge also ordered that the personal property remain with the person currently in possession of it, and granted appellee a monetary award of $64,613, one half of the total value of the marital property.

### Analysis

### Social Security

■ Appellant first asserts that appellee's contribution to social security should have been included in the marital pension assets. Although this appears to be an issue of first impression in Maryland, the treatment of social security benefits in the division of marital property has been considered by a number of other states. After reviewing these decisions, it is clear to us that the Supremacy Clause of the United States Constitution precludes states from intervening in the allocation of social security benefits. Consequently, social security benefits may not be considered marital property or be subject to distribution in any manner in a divorce proceeding. *See, Taylor v. Director of OWCP,* 967 F.2d 961, 963–64 (4th Cir.1992) (characterizing social security as government benefit rather than property right); *Olson v. Olson,* 445 N.W.2d 1, 5–11 (N.D.1989) (summarizing preemption analysis as applied by various state courts); *Deering v. Deering,* 292 Md. 115, 125 n. 8, 437 A.2d 883 (1981) (recognizing potential preemption of state divorce law by federal pension law). The trial judge did

not err in declining to include appellee's contributions to social security in valuing the marital pension assets.[3]

### Transfer of Title to Property

 In Maryland, in a domestic case, the trial judge has no authority to transfer ownership of property from one of the parties to the other, other than to transfer an interest in a pension, retirement, profit sharing, or deferred compensation plan. *Md.Fam.Law Code Ann.* §§ 8–202(a)(3), 8–205(a). Rather, the trial judge may either grant a monetary award to adjust the equities of the parties, *id.* § 8–205(a), or, in the case of property owned by both of them, order that the property be sold and the proceeds divided equally. *Id.* § 8–202(b)(2).

 With respect to the titling of personal property, the Court of Appeals has recognized a distinction between "the broad category of personal property generally and the narrower one of household goods and furnishings purchased for the use of the family unit." *Bender v. Bender,* 282 Md. 525, 533–34, 386 A.2d 772 (1978). Unless rebutted by evidence of individual ownership, the presumption that the purchasing spouse makes a gift of one's goods in the latter category to the marital unit results in joint ownership of such goods. *Id.* at 534–37, 386 A.2d 772. Thus, household furnishings may be disposed of by a partition, or by a sale of the property and a division of the proceeds. Permitting each party to keep the items of jointly owned property then in his or her possession at the time of the divorce is "tantamount to transferring ownership of that property from both parties to one of them ... [which] the court is not authorized to do." *Rogers v. Rogers,* 80 Md.App. 575, 586, 565 A.2d 361 (1989).

Unfortunately for the parties, it is clear from the record before us that the trial judge did exactly that which is prohibited by *Rogers.* Although recognizing that sale is ap-

---

**3.** In an appropriate case, of course, it may be that a court could consider the fact that a party is receiving, or will receive, social security benefits, as "any other factor" in determining whether to make a monetary award. *See* Fam. Law Art. § 8–205(b)(10).

propriate in a situation such as this one, the trial judge, perhaps misled by the incorrect heading on the S–74 form, has confused the issues of possession and titling. In making his determination, the trial judge said:

> In most cases whenever the property is either titled in joint names and then we have to order sale and do things of that nature in order to get to the ultimate disposition of the property. In this case it is a little bit different. Everybody seems to own everything themselves and I am not yet dealing with the property that is in the house and how it is titled.
>
> . . . .
>
> I am now going to go back to the second page. The way I read this, everything is in the husband's name—here I have the husband's sleep sofa, husband's washer, night stand. This could be possession, too—sewing machine. I am going to consider those as part of the marital property and I will consider them titled as the S–74 says they are.
>
> . . . .
>
> I now come to a total of $129,226. I am now going to divide that by two . . . it says whose pension [sic] it is in—it stays within that person's possession—this is the value of the total for marital property purposes. If it is in his possession, . . . that stays within his possession. The sewing machine is in her possession and the S–74 says that. I take the $129,226 figure, divide it by 50 percent, equals $64,613.

██ In the absence of evidence to the contrary, appellant and appellee are presumed to hold the household goods and furnishings as tenants by the entirety. Upon divorce, they then hold such property as tenants in common. Consequently, the trial judge had no authority to permit either of them to retain possession of the property then in his or her possession, but should have ordered the property sold and the proceeds divided between them. Under these circumstances, we shall set aside the monetary award and remand the case to the

circuit court.[4]

## *Valuation of Appellant's Business*

 The trial judge gave appellant's real estate brokerage a value of $8000. Appellant contends that the trial judge erred because his business had no value. As the Court of Appeals recently pointed out:

[Rule 8–131(c) and its precursors Rules 886 and 1086] have been consistently interpreted in our cases to require that appellate courts accept and be bound by findings of fact of the lower court unless they are clearly erroneous. And as we said in *Ryan v. Thurston* [276 Md. 390, 392, 347 A.2d 834 (1975)], "[t]he appellate court must consider evidence produced at the trial in a light most favorable to the prevailing party and if substantial evidence was presented to support the trial court's determination, it is not clearly erroneous and cannot be disturbed." Moreover, as we reiterated in *Housing Comm'n v. Lacey*, [322 Md. 56, 59–60, 585 A.2d 219 (1991)], the trial court is not only the judge of a witness's credibility but also of the weight to be attached to the evidence. It is thus plain that the appellate court should not substitute its judgment for that of the trial court on its findings of fact but will only determine whether those findings are clearly erroneous in light of the total evidence.

---

4. We note that, although before us she defends the trial judge's award of personal property, while before the trial judge appellee sought a sale of the personal property:

 THE COURT: ... What is the bottom line? It is all owned in individual names. There is no joint property here.

 MS. GORINSON [counsel for appellee]: There is joint personal property which I expect you will order to be sold.

 On the second page of the S–74, things like washers.

 THE COURT: It is in the name of the husband.

 MS. GORINSON: It is in his possession.

 THE COURT: Says title, under title it says him. I am looking at the title/possession.

 MS. GORINSON: A washer doesn't have a title, but he does have it in his possession. We would ask the Court that all those items listed on the second page of the S–74 except for the two pensions be ordered sold and the property divided.

*U.S. Money v. Kinnamon,* 326 Md. 141, 149, 604 A.2d 64 (1992).

The trial judge valued appellant's real estate brokerage by considering appellant's 1989 tax returns which showed a gross income of $6240, appellant's 1990 tax returns which showed a gross income of $7343, and appellant's testimony that the brokerage had no value whatever. After considering this evidence and discounting appellant's opinion of its value, the trial judge assigned a value of $8000 to the brokerage.[5] There was no error.

### *Pensions*

Appellant next contends that the trial judge erred in awarding appellee a survivor benefit annuity in conjunction with the "if, as and when" payment of appellee's interest in the marital portion of appellant's civil service pension. While we do not find the award of a survivor benefit annuity to be erroneous, we conclude, after reviewing the trial judge's overall treatment of the pension assets, that he erred in distributing the pension.

From the testimony of an economist who qualified as an expert in valuing pensions, the trial judge determined that the marital portion of appellant's pension had a present value of $167,907, and that the marital portion of appellee's pension from the Maryland State Retirement System had a present value of $12,023. The trial judge then granted half of the pension, or $89,965 to each party. After adjusting for the value of appellee's pension, which was to remain in her name, appellee was awarded $77,942. The economist calculated that this would amount to an "if, as and when" payment of 16.9% of the pension payments received by appellant. We think it clear from the record that the formula used by the economist was not that prescribed by *Bangs v. Bangs,* 59 Md.App. 350, 475 A.2d 1214 (1984). In *Bangs,* we held that it was not an

---

5. "I am not going to buy the fact it is not worth anything because he takes a tax loss of $2500 on it each year. I think the IRS would be rather upset if he was taking a tax loss on nothing."

abuse of discretion to award future payment of the divorced spouse's share of retirement benefits according to the following formula:

former spouse share × $\dfrac{\text{Years and months of marriage}}{\substack{\text{Years and months of employment} \\ \text{credited toward retirement}}}$

*Id.* at 356, 475 A.2d 1214; *see also Rohrbeck v. Rohrbeck,* 318 Md. 28, 39 n. 5, 566 A.2d 767 (1989).

In *Hoffman v. Hoffman,* 93 Md.App. 704, 614 A.2d 988 (1992), we held that, because the marital portion is determined in relation to the total years of employment, and therefore "cannot be determined until the appellant retires from civil service and the number of years of total employment is known," the *Bangs* formula is the formula to be used in awarding an "if, as and when" payment. *Id.* at 719, 614 A.2d 988. Thus, awarding appellee 16.9% of the pension payments received by appellant was erroneous.

In addition to the 16.9% "if, as and when" payment, the trial judge ordered appellant to provide appellee with a former spouse survivor annuity to ensure appellee that she would receive her portion of appellant's pension in the event of appellant's death. Because this issue will no doubt recur upon remand, we shall address it here.

 Appellant first asserts that the award of a survivor annuity is improper on the basis that a "survivor benefit is not property acquired during the marriage, and therefore cannot constitute marital [property]." We disagree. Unless jointly waived by the employee and his/her spouse at the time of retirement, the annuity to be received by the employee is automatically reduced by 2½ of the first $3,600 plus 10% of the amount over $3,600 in order to provide a survivor annuity for the spouse. 5 U.S.C. §§ 8339(j)(1), (4). If elected by the employee, or ordered by a court in relation to a divorce or annulment, a former spouse may also be entitled to a survivor annuity. 5 U.S.C. § 8341(h)(1). The reduction of the employ-

ee's annuity to pay for a former spouse survivor annuity is at the same rate as for the spousal survivor annuity. 5 U.S.C. §§ 8339(j)(2), (4). We thus find that the right to a survivor annuity is incident to the marital relationship, and that such a right, analogous to the right to the pension benefits themselves, falls within the definition of marital property contained in *Deering v. Deering, supra,* 292 Md. at 125, 437 A.2d 883. Consequently, it is within the discretion of the trial judge to order that a former spouse survivor annuity be provided so as to continue the protection of the spouse's interest in the marital portion of the pension previously provided by the spousal survivor annuity.

Appellant also asserts that "the Court made no effort to determine the cost of a survivor's benefit nor recognize that the appellant would be spending future funds (non-marital) to provide such a benefit" and that, contrary to *Heyda v. Heyda,* 94 Md.App. 91, 615 A.2d 1218 (1992), the trial judge gave no consideration to federal regulations concerning orders from state courts affecting a former spouse's survivor annuity. We shall address these concerns together.

*Heyda* involved a court order that, in satisfaction of a stipulation between the parties that Mrs. Heyda be awarded a 50% interest in Mr. Heyda's pension from the federal government with "survivorship benefits," required Mr. Heyda to provide a former spouse survivor annuity, to be replaced with an insurable interest annuity should Mrs. Heyda remarry before age 55.[6] On appeal, we determined that there were significant differences between the two types of annuities and that, in order to comply with the circuit court's order, Mr. Heyda would be required to take action contrary to federal regulations governing such annuities. On remand, the circuit court was instructed to "*carefully* consider the limitations imposed by the federal government on a state court's power to pass an order affecting a Former Spouse Survivor Annuity

---

**6.** A former spouse survivor annuity terminates if the former spouse remarries before becoming 55 years of age. 5 U.S.C. § 8341(h)(3)(B)(i).

and/or and Insurable Interest Annuity." *Id.* at 106, 615 A.2d 1218.

In the instant case, we refer the circuit court to 5 C.F.R. Part 838, entitled "Court Orders Affecting Retirement Benefits," which "regulates the Office of Personnel Management's handling of court orders affecting the Civil Service Retirement System (CSRS) or the Federal Employees Retirement System (FERS)." *Id.* § 838.101.[7] As in *Heyda*, we believe it important to review the pertinent provisions of the regulations contained in 5 C.F.R. Part 838 before explaining our ruling.[8]

There are three types of retirement benefits that may be affected by court orders in connection with divorce, annulment, or legal separation: (1) the employee's retirement payment or "employee annuity," (2) the refund of employee contributions in the event of pre-retirement separation from government employment, and (3) the spousal survivor annuity, which provides for continued payment to the spouse after the employee's death. *See* 57 Fed.Reg. at 33571. The regulations establish requirements, explain terminology, and recommend language to be used in the preparation and processing of court orders affecting each type of benefit. 5 C.F.R. § 838.102(a).

Of significance to the case *sub judice*, the regulations permit a court to award a former spouse a "pro-rata share" of

---

7. In *Heyda*, we referred to 5 C.F.R. Part 831, Subpart Q. *Heyda*, 94 Md.App. at 102–03, 615 A.2d 1218. Those interim regulations were superseded when the Office of Personnel Management (OPM) issued its expanded final rule, which became effective August 28, 1992. 57 Fed.Reg. 33570 (1992), *codified at* 5 C.F.R. Part 838. The new regulations apply to court orders received by OPM on or after January 1, 1993. 5 C.F.R. § 838.101(c)(1). A slightly modified restatement of the procedures previously found in Part 831 Subpart Q is now found at Part 838 Subpart J. These rules remain applicable to court orders received by OPM prior to January 1, 1993. 5 C.F.R. § 838.102(6).

 The supplementary information published with the rule, 57 Fed.Reg. 33570–74, is helpful in endeavoring to understand the new regulations.

8. This obviously will not be a comprehensive review of each factor that should be considered. It is expected that, henceforth, when marital property includes a federal pension, the attorneys and the trial judge will have familiarized themselves with the information contained in 5 C.F.R. Part 838.

an employee's retirement annuity. 5 C.F.R. § 838.621. A pro-rata share is defined as "one-half of the fraction whose numerator is the number of months of Federal civilian and military service that the employee performed during the marriage[9] and whose denominator is the total number of months of Federal civilian and military service performed by the employee." *Id.* This provides an equal division of the marital portion of the pension under what is essentially the *Bangs* formula, with the refinement that the marital portion is adjusted to compensate for any period during the marriage that the employee was not accumulating credit toward retirement.[10] The regulations also allow the court to specify its own formula rather than award a pro-rata share, which provides the court with the ability to modify the calculation and unequally divided the marital portion. 5 C.F.R. § 838.305(b)(1)(iii); 5 C.F.R. Pt. 838, Subpart F, App. A, ¶ 211.

The regulations require the court order to specify the type of employee annuity to which the former spouse share calculation should be applied. 5 C.F.R. § 838.306. Three standard types of annuity are defined. The self-only annuity is the entire annuity to which an employee is entitled before any deductions. The gross annuity is the self-only annuity less deductions for the cost of survivor annuity benefits. The net annuity is the gross annuity less other deductions, such as health and life insurance and taxes. 5 C.F.R. § 838.103. The court may instead provide its own definition of the annuity. 5 C.F.R. Pt. 838, Subpart F, App. A, ¶ 301. On the other hand,

---

9. OPM will calculate the marital service based upon the date of the marriage provided by the court order. Unless otherwise ordered, the end of the marriage will be deemed to be the date the court order is filed with the court clerk. 5 C.F.R. Pt. 838, Subpart F, App. A, ¶ 204.

10. We note that the regulations distinguish between service and creditable service, the difference being that time attributable to unused sick leave is included in the latter. 5 C.F.R. § 838.624(c)(1). If the court orders length of service to be based upon creditable time, the amount of unused sick leave to be considered marital must be specified. *Id.* § 838.624(c)(2)(i). Otherwise, unused sick leave will be included only in the total length of service. *Id.* § 838.624(c)(2)(ii). This may result in a unintended reduction in the marital percentage.

if the court order is silent, former spouse payments will be based upon the gross annuity. 5 C.F.R. § 838.306(b).

When the court has awarded a portion of an employee's annuity to a former spouse, the regulations provide that the court order also instruct the OPM the proper course of action to be taken should the employee separate before retirement and request, under 5 U.S.C. § 8342, a refund of contributions. 5 C.F.R. Pt. 838, Subpart F, App. A, ¶ 400 *et. seq.* The court may either bar such a refund, or award the former spouse a share of the refund. *Id.*

The final type of retirement benefit that may be affected by a state court award to a former spouse is the survivor annuity. Unless waived, the widow(er) of an employee receives a spousal survivor annuity of 55 percent of the employee's annuity. 5 U.S.C. § 8341(b)(1); 5 C.F.R. § 831.-614(a). A former spouse may be awarded a survivor annuity either as a percentage of this "maximum survivor annuity," or as a percentage, but not greater than 55 percent, of the employee annuity. 5 C.F.R. Pt. 838, Subpart I, App. A, ¶ 700 *et. seq.* A court ordered "pro-rata share" of the survivor annuity will be based on the 55 percent maximum survivor annuity rather than the total employee annuity. 5 C.F.R. § 838.922(a).

The cost of the survivor annuity may be borne by the employee, the former spouse, or shared, depending upon the type of annuity the court selects as the basis for the former spouse's share during the lifetime of the employee. If the former spouse's share is to be determined upon the self-only annuity, the result is that the employee bears the full cost of the former spouse survivor annuity. If the former spouse's share is to be based upon the gross annuity, the cost of the survivor benefit is shared between the employee and former spouse. The court may also order that the cost of the survivor benefit be paid from the former spouse's share of the annuity, thus shifting the entire cost to the former spouse. 5 C.F.R. § 838.933; 5 C.F.R. Pt. 838, Subpart I, App. A, ¶ 800 *et. seq.*

■ The combined effect of *Hoffman* and the new OPM regulations is to place the following constraints on the trial judge's discretion in determining the proper award of the marital portion of federal pension assets. First, with respect to an "if, as and when" payment of the spouse's share of the annuity benefits during the life of the employee, the court may order either a pro-rata share or, in order to adjust the allocation of the marital share (*e.g.* to award the spouse one-third rather than one-half), supply its own formula, provided the calculation of the marital portion conforms with *Bangs.* To remedy the failure to consider any break in service that might have occurred during the marriage, we shall modify the definition of the *Bangs* formula to correspond to the OPM calculation of the marital portion: [11]

$$\text{former spouse share} \times \frac{\text{years and months of service credited towards retirement during marriage}}{\text{total years and months of service credited towards retirement.}}$$

■ Second, it is within the trial court's discretion to award a former spouse survivor annuity in conjunction with an "if, as and when" payment, and to determine the method of payment for the survivor annuity. A determination that the cost of the survivor annuity is to be borne in full or in part by the employee is neither an abuse of discretion, nor an award of non-marital earnings. The former spouse's share of the annuity payment is a return to the non-employee spouse of his/her share of the marital portion of the pension. The employee retains the remainder of the marital portion in addition to the non-marital portion. To the extent that the employee bears all or part of the cost of the survivor annuity, it is deemed to be derived from his/her share of the marital portion of the pension.

---

**11.** Although we are here addressing federal pensions, this modification of the *Bangs* formula applies to all "if, as and when" distributions of pensions.

Finally, the trial judge should address the possibility that the award might be frustrated should the employee separate from government service before retirement and request a refund of contributions.

### Choice of Disposition

On two occasions during the trial, the trial judge presented appellant with a choice of the method of payment to be established. The first was when, in attempting to find a way to accommodate appellant's request that appellee's social security benefit be regarded as marital property, yet aware that expert testimony established that it was not possible to factor social security contributions into the calculation of the "if, as and when" payment, the trial judge offered to include appellee's social security benefits if the present value of all pensions were included in determining the monetary award, after advising appellant that he [the trial judge] intended to reduce the monetary award to judgment, payable over ten years. Later, concerned that appellee might receive little or none of her share of the marital portion of appellant's pension were appellant to die prematurely, the trial judge presented appellant with the option of either providing the former spouse survivor annuity or accepting inclusion of the present value of the pensions in the monetary award. In each instance, appellant opted for the "if, as and when" method of payment.

As we explained earlier, social security may not be considered marital property. The option for its inclusion was thus improper and the issue of choice in that instance is moot. As for the second instance, we considered the issue of alternative judgments in *Hoffman v. Hoffman, supra,* 93 Md.App. 704, 614 A.2d 988:

> The trial judge also erred in his order by granting to Ms. Hoffman from Mr. Hoffman's pensions an award of a lump sum payment or, in the alternative, an "as, if and when" award. By making the pension award in the alternative (at the election of the appellee) rather than making a decision, the trial court made it impossible to determine properly the amount of the monetary award. The court must determine

and consider the amount awarded to a spouse from the other spouse's pension in order to calculate accurately the amount of the monetary award. Prior to making its decisions it is, of course, proper for the court to inquire as to the parties' preference. The court's order, however, should be a final order.

*Id.* at 719–20, 614 A.2d 988.

One obvious consequence of using the *Bangs'* formula is the difficulty, if not impossibility, of offsetting a smaller non-civil service pension against a larger civil service pension and awarding the difference of the civil service pension on an "if, as and when" basis. This is the situation that the trial judge was attempting to address and will once again be faced with on remand. The trial judge may instead find it appropriate to award separately an interest in each pension, to offset the non-civil service pension against other property in determining the monetary award, or to include the present value of the government pension in determining the monetary award, rather than award an "if, as and when" payment, depending upon the equities of the situation. Because such options will affect the parties in significantly different ways, we see nothing improper if the court were to present several alternatives, allow either one or both of the parties to decide which they prefer, and then base its final decision upon the choice selected by the parties, whether that choice is presented as a consent order or in open court. This is quite different from *Hoffman,* where the final judgment was expressed in the alternative.

 The ability of a party to meet the provisions of the final judgment should be considered by the trial judge in evaluating the equities of the situation. *See Deering v. Deering, supra,* 292 Md. at 131, 437 A.2d 883 (law does not contemplate an award "so harsh as to force a wage earner spouse to liquidate his or her pension interest in order to satisfy it"). In the absence of such an abuse of discretion, the fact that the trial judge may have been aware that a party is

less comfortable with one of the alternatives offered does not rise to the level of coercion.

### *Sanctions*

Appellant finally asserts that the trial judge erred in imposing sanctions for his failure to produce tax and pension documentation in a timely manner, pursuant to appellee's discovery request. According to appellant, these documents were not in his possession.

Among other things, Maryland Rule 2–422 permits any party to request that documents within the possession, custody, or control of another party be made available for inspection and copying. This rule is derived in part from Rule 34 of the Federal Rules of Civil Procedure, and the operative language of the two rules is nearly identical. When, as here, there is no Maryland appellate decision to guide us, we may "look to federal decisions construing the corresponding federal rule for guidance in construing the similar Maryland rule." *Bartell v. Bartell,* 278 Md. 12, 18, 357 A.2d 343, 346 (1976) (quoting *Snowhite v. State, Use of Tennant,* 243 Md. 291, 308– 09, 221 A.2d 342, 352 (1966)).

It is clear from such decisions that control is not synonymous with possession, but refers to the "right, authority, or ability to obtain upon demand." *Scott v. Arex, Inc.,* 124 F.R.D. 39 (D.Conn.1989); *see also Haseotes v. Abacab International Computers, Inc.,* 120 F.R.D. 12 (D.Mass.1988) (control includes legal right to obtain); *Biben v. Card,* 119 F.R.D. 421 (W.D.Mo.1987) (whether party retained copy of documents or whether documents are beyond jurisdiction of court are not factors relevant to issue of control). Appellant's tax and pension records were no doubt in his control and thus properly the subject of a request for production of documents.

Appellant asserts that appellee could have used the trial court's subpoena power to obtain the desired information from the IRS and from his employer. Whether a Maryland court may reach the IRS and the District of Columbia is

questionable. Moreover, appellant misunderstands the proper exercise of subpoena power. A subpoena is to be used to compel the attendance and testimony of witnesses, and production of documents at either a court proceeding or a deposition, and "shall not be used for any other purpose." *Maryland Rule* 2–510(a). Although a party may choose to depose the non-party holder of documents rather than utilize a request for production of documents, that option is not one that may be forced upon the party seeking discovery. Where documents are within the control of the party upon whom a request for production of documents has been made, *that party* must obtain and produce those documents. To hold otherwise would be *to permit circumvention of the discovery* process and create unnecessary expense.

The imposition of sanctions for failure to comply with discovery rules is within the sound discretion of the trial court, and "cannot be disturbed on appeal without a clear showing that this discretion was abused." *Mason v. Wolfing*, 265 Md. 234, 236, 288 A.2d 880, 881 (1972). We note from the record three postponements and at least five hearings directly traceable to appellant's dilatory behavior. We find no abuse of discretion.

**JUDGMENT VACATED AS TO THE MONETARY AWARD, DISPOSITION OF RETIREMENT BENEFITS AND PERSONAL PROPERTY AND CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**IN ALL OTHER RESPECTS, JUDGMENT AFFIRMED.**

**COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

**APPELLEE'S REQUEST FOR ATTORNEY'S FEES FOR APPEAL DENIED.**