927 A.2d 20

**DYNAMIC CORPORATION**

v.

**SHAN ENTERPRISES, LLC.**

**No. 1457 Sept.Term, 2006.**

Court of Special Appeals of Maryland.

June 29, 2007.

Vicki Inge Fang, Lanham, MD (Klimek, Kolodney & Casale, PC, on the brief), Washington, DC, for Appellant.

Joseph A. Compofelice, Jr. (Marcus & Bonsib, on the brief), Greenbelt, MD, for Appellee.

Panel:  MURPHY, C.J., DEBORAH S. EYLER and SHARER, JJ.

DEBORAH S. EYLER, Judge.

In the Circuit Court for Montgomery County, Shan Enterprises, LLC ("Shan"), the appellee, sued Dynamic Corporation ("Dynamic") for breach of contract. Dynamic in turn filed a countercomplaint for breach of the same contract. Before trial, the court issued a discovery sanction order precluding Dynamic from introducing into evidence, either in its defense or in the prosecution of its counterclaim, certain categories of documents. The case was tried to the court for three days. The court returned a verdict in favor of Shan, awarding damages of $48,029. The court ruled against Dynamic on its counterclaim.

After the court denied Dynamic's timely post-trial motion to alter or amend, Dynamic noted this appeal.

## FACTS AND PROCEEDINGS

This case arises out of a dispute between a general contractor and one of the subcontractors on a renovation project for a high school in the District of Columbia ("Project"). Dynamic, the general contractor for the Project, entered into two subcontracts with Shan: one to renovate the school's "Radio Lab," for $82,500, and the other to renovate the school's "IT Lab," for $205,000.

During the course of the work, Dynamic and Shan agreed to certain "change orders" that altered the scope of the work and the payments due. Disagreements about the scheduling of work and the timing of payments arose. Dynamic complained that Shan had not completed work on the Radio and IT labs according to the specifications and time frames in the subcontracts; Shan responded that it had not been paid. Dynamic sent a "cure letter" to which Shan did not respond.

Ultimately, Dynamic terminated the subcontracts on the ground that Shan had "failed to perform the work ... as per the drawings and specifications." Dynamic demanded that Shan immediately refund all monies Dynamic had paid it and pay the "[a]dditional expense toward demolition and rework"

to finish the work. Dynamic refused to pay any of Shan's outstanding invoices.

On August 30, 2005, about a year after the demise of the parties' business relationship, in the Circuit Court for Montgomery County, Shan sued Dynamic for breach of contract. That same day, the court issued a scheduling order setting a December 28, 2005 deadline for completion of discovery; a January 12, 2006 deadline for filing dispositive motions; and a March 3, 2006 pretrial conference date. (A trial date was not scheduled at that time.)

Dynamic filed a timely answer and a counterclaim, alleging that Shan had breached both subcontracts by failing to perform and, as a consequence, Dynamic had had to terminate Shan from the Project and had incurred over $60,000 in costs to complete the work.

On November 18, 2005, Shan propounded interrogatories and a request for production of documents ("RPD"). When no responses were received by January 12, 2006, it filed a motion to compel. Dynamic did not file a response to that motion. However, on January 31, 2006, it mailed answers to interrogatories and a written response to the RPD to Shan. There is no dispute that Shan received the discovery responses.

On February 2, 2006, the court, not having an opposition to the motion to compel before it, issued an order directing Dynamic to "provide full and complete responses to [Shan's] interrogatories and request for production of documents no later than February 17, 2006" ("February 2 Order"). On February 21, 2006, Dynamic filed a certificate stating that, on January 31, 2006, it had provided Shan with answers to interrogatories and a written response to the RPD.

The discovery dispute that became dispositive in this case concerned Shan's RPD, in which it sought production of 24 categories of documents. To five of the requests, Dynamic responded that it did not have any such documents. To one request, Dynamic objected on the ground that it was "vague, ambiguous, and incoherent." [1] To the remaining 18 requests, Dynamic responded that it would produce the requested docu-

---

1. This particular request is not an issue on appeal.

ments at its office in Hyattsville "at a mutually convenient time." [2]

On February 21, 2006, Shan's lawyer wrote to Dynamic's lawyer complaining that Dynamic's response to its RPD was insufficient as it did not give "indication as to what, if any, particular documents are available, or what volume of documents is being referred to by Dynamic in its responses." [3] When counsel for the parties appeared for the pretrial conference on March 3, 2006, however, they agreed that the documents would be produced at Dynamic's office. After some debate over the date for the production, the parties agreed to March 16, 2006, at 1:00 p.m. They further agreed that Shan would designate the documents to be copied, that Dynamic would promptly copy the designated documents, and that Shan would pay the copying charges.

At the pretrial conference, the case was scheduled for a May 8, 2006 trial date.

As agreed, on March 16, at 1:00 p.m., Shan's lawyer appeared at Dynamic's office; he brought Shan's president with him. Dynamic's documents were laid out on a table, as they were kept by Dynamic in the usual course of its business. Counsel for Dynamic in the litigation was not present for most of the inspection, but in-house counsel and two of Dynamic's employees, Jacob Abraham and Tinah Ibironke, were present to assist, and did so. For example, at one point during the document inspection, Shan's lawyer asked Mr. Abraham to show him "all of the documents you have related to Micon." [4]

---

**2.** Dynamic qualified some of its responses to say that the documents requested would be produced to the extent they were not privileged. The dispute that arose did not concern whether any such documents were privileged.

**3.** Shan did not further pursue that complaint, by a motion to compel or for sanctions. The complaint had no legal basis in any event. As we shall discuss, *infra,* Dynamic was not required to respond by identifying particular documents or by describing the volume of its documents.

**4.** Micon was one of the subcontractors Dynamic hired to complete Shan's work.

Mr. Abraham then pointed out the relevant notebooks and stacks of documents.

After spending about four hours reviewing documents, Shan's lawyer made handwritten notations on "yellow sticky" post-it notes. Three notes that read "All" or "Entire Notebook" were attached to particular notebooks or piles of documents. Other notes were left, but were not used as markers. One read:

> All documents, without limitation, related to Orbe Integrations, LLC. *Including, But Not Limited To:* 1) payroll, 2) contracts, 3) payments, 4) correspondence.

Another read, "All invoices." Finally, another note read, "All Correspondence Between DCPS and Dynamic."[5] Before leaving, Shan's lawyer told one of Dynamic's representatives that he would be sending a letter memorializing which documents he wanted copied.

Shan's lawyer did not send such a letter. Instead, on March 27, 2006, he wrote to Dynamic's lawyer, asking why Dynamic had not yet copied the documents he had requested and threatening to file a motion for sanctions if copies were not immediately provided. Dynamic's lawyer responded that her client's representatives had been waiting to receive the promised letter before making copies.

On March 29, 2006, Shan's lawyer responded in writing, attaching a list ("March 29 List") of all the documents he wanted copied and demanding that the copies be delivered to his office in two days, by March 31. Like the post-it notes, the March 29 List referred to some documents specifically (e.g., "entire 'chronology of events' notebook dated 4/29/2005") and to others by category (*e.g.*, "[a]ny and all documents related to Orbe Integrations, LLC...."). The categories of documents in the March 29 List were not the same as the categories of documents in Shan's RPD, however; nor were

---

5. In its brief and before this Court, Dynamic misstates that there were seven post-it notes left by Shan's counsel; however, its reference to the record extract pages that contain the notes, as they were attached to Dynamic's opposition to Shan's motion for sanctions, makes clear that it is referring to a total of six, not seven, notes.

they the same as those written on the post-it notes that (according to Dynamic's representatives) Shan's lawyer left on the document production table on March 16.

When Dynamic did not deliver any copies by March 31, Shan filed a motion for sanctions with a motion to shorten time for response, which was granted before Dynamic received it. Dynamic filed an opposition to the motion for sanctions, stating that all of the documents that had been designated for copying by specific instruction (such as "entire notebook") were in the process of being copied and would be delivered to Shan's counsel's office no later than April 13, 2006. (In fact, they were delivered the day before that.) Dynamic explained that, because Shan's lawyer had not clearly identified which other documents he wanted to have copied, no other documents had been copied. Shan filed a reply.

On May 3, 2006, the court held a hearing on the motion for sanctions. It granted the motion and issued an order prohibiting Dynamic from introducing certain documents into evidence at trial. We shall discuss the court's ruling in greater detail below.

The case went to trial on May 8, 2006.

On appeal, Dynamic poses two questions for review,[6] which we have combined into one:

I. Did the circuit court err or abuse its discretion in sanctioning Dynamic for failing to produce documents in discovery?

For the reasons we shall explain, we hold that the circuit court erred in ruling that Dynamic committed a discovery

---

6. As phrased by Dynamic, the questions presented are:
   I. Did the lower court properly exercise its discretion when it ignored the affidavits and other documentary evidence submitted by defendant and relied instead on the conclusory allegations of plaintiff's brief?
   II. Did the lower court commit reversible error when it sanctioned defendant for producing documents as they were kept in the usual course of business rather than segregating them according to plaintiff's requests?

violation and therefore it abused its discretion in imposing a discovery sanction upon Dynamic, to Dynamic's prejudice. Accordingly, we shall reverse the judgments and remand the case to the circuit court for further proceedings.

## DISCUSSION

### (a)

Before delving into the legal issues in this case, we shall recount in some detail the assertions Shan offered in support of its motion for sanctions and Dynamic's responses in opposition.

Shan argued that the court's February 2 Order directed Dynamic to produce the documents sought in Shan's RPD; that, at the March 16 document production, "[m]any documents were marked for copying, with the agreement that [Dynamic] would copy them at *[Shan's] expense* and promptly deliver them to [Shan]" (emphasis in original); but that, as of March 29, Shan had not received any copied documents from Dynamic, and had not learned when the copies would be provided. Shan maintained that Dynamic's failure to deliver document copies was a violation of the February 2 Order, for which, under Rule 2–433(b), the court was authorized to impose any of the sanctions in Rule 2–433(a). Shan complained:

> As a result of [Dynamic's] failure to participate in discovery and failure to comply with this Court's February 2, 2006 Order, [Shan] has suffered irreparable prejudice in that it has been unable to prepare at all for the trial of this matter which is scheduled to begin in only four weeks.

Shan asked the court to grant relief pursuant to Rules 2–433(b) and (c), including precluding Dynamic from introducing evidence in defense of its claim.[7]

---

**7.** In support of its motion for sanctions, Shan attached the court's scheduling order; the February 2 Order; Shan's RPD; Dynamic's January 31 written response to the RPD; the March 29 letter from Shan's lawyer to Dynamic's lawyer; the March 29 List; a February 21,

In opposition, Dynamic asserted that it had produced the documents responsive to Shan's RPD on March 16, 2006, as agreed; that the documents were produced as they were kept in the usual course of business; that Dynamic's in-house counsel and Mr. Abraham and Ms. Ibironke had been present for the document production; that Shan's lawyer had marked "more than a thousand pages" by placing post-it notes stating "all" or "entire notebook" on certain binders; and that he also had "left other notes that did not designate which documents were to be copied" but instead sought general categories of documents. Dynamic attached copies of the post-it notes to its opposition. It further asserted that, before leaving the document production, Shan's lawyer "instructed Mr. Abraham and Ms. Ibironke that he would send a letter listing the documents he wanted so that everyone 'would be on the same page' and that they should copy the documents on receipt of his list." In affidavits submitted with Dynamic's opposition, Mr. Abraham and Ms. Ibironke attested to the truth of those assertions.

Dynamic's opposition went on to say that it had been waiting to receive Shan's counsel's promised letter before having the documents copied; that the letter did not arrive; and that, instead, Shan's lawyer wrote to Dynamic's lawyer "berating" her for not having furnished copies of documents, saying that it was never his intention that Dynamic wait to receive his letter before having copies made, and attaching a list of documents, *i.e.,* the March 29 List, to its letter. The letter went on to threaten that, if the categories of documents in the March 29 List were not produced within two days, Shan would move for sanctions.

---

2006 letter from counsel for Shan to counsel for Dynamic, complaining about Dynamic's written response to the RPD, specifically, that it did not identify specific documents in its written response; a March 9, 2006 letter, also from counsel for Shan to counsel for Dynamic, complaining that counsel had not yet arrived at a date on which the documents would be produced, and threatening to file a motion for sanctions; and a March 10, 2006 letter from counsel for Dynamic to counsel for Shan, stating that the documents would be provided for inspection at the time and place counsel for Shan had requested (March 16 at 1:00 p.m.).

Dynamic further asserted that the documents marked with post-it notes designating "all" or "entire notebook" were in the process of being copied, despite Shan's counsel's initial instruction to wait for his letter. Dynamic maintained that it had fully complied with the February 2 Order and Rule 2–422.

In its reply to Dynamic's opposition, Shan represented that, because the documents produced by Dynamic were voluminous, counsel for Shan "carefully marked stacks of documents and notebooks related to individual subcontractors and other entities for copying by [Dynamic]" and that, even though Shan's lawyer had said he would send a letter listing the documents to be copied, it was understood by all present that the documents that had been marked with post-it notes were to be copied immediately; and that, by not doing so, Dynamic simply had failed to respond to discovery. Shan urged the court to impose the most serious discovery sanction upon Dynamic for its discovery failure.

At the hearing on the motion for sanctions, counsel for Shan began his argument by characterizing the motion as one that "amounts to what is pretty much a request for dispositive relief." He complained that, even though the post-it notes he wrote on March 16 had specified the particular documents he wanted copied, all of those documents had not been copied, even by the time of the hearing.

Counsel for Dynamic responded that the documents that had been marked "all" or "entire notebook" had been copied and provided, as Dynamic could tell which documents were being requested. The post-it notes that were not attached to any notebook or particular pile of documents, and that described a category of documents, such as "All documents, without limitation, related to Orbe Integrations, LLC," did not specify documents to be copied, however. Rather, they restated categories of documents. Likewise, the March 29 List enumerated categories of documents and did not specify documents to be copied. Moreover, both the post-it notes and the March 29 List described categories of documents to be copied that were not categories requested in Shan's RPD. Counsel

for Dynamic argued that, in effect, these notes and the March 29 List were a new RPD, filed months after the close of discovery.[8]

The hearing devolved into an argument between counsel over what was written on, and meant by, various post-it notes Shan's lawyer left in the document production room. Shan's lawyer represented that he had written detailed instructions on the post-it notes that mirrored the March 29 List he later sent, and that he could call the Shan representative who was present to testify that that was the case. (Shan had not furnished an affidavit by that person, or anyone else, in support of its motion for sanctions or in reply to Dynamic's opposition to the motion.)

Counsel for Dynamic responded that the post-it notes left by counsel for Shan were the precise notes that she copied and attached to Dynamic's opposition to the motion for sanctions, and did not correspond to either Shan's RPD or the March 29 List, and that she already had furnished affidavits by Mr. Abraham and Ms. Ibironke to support that factual assertion. Counsel for Shan replied that his client's representative was present and could testify. No testimony was taken, however.

The hearing continued, *ad nauseum*. Counsel for Dynamic argued, as above, that the only instructions for copying were the post-it notes; that her understanding of the law was that, given that Shan made its document requests in general categories, Dynamic was entitled to produce the documents for inspection as they were kept in the ordinary course of business, and did so; and that, with respect to the issue of copying, Dynamic had given Shan copies of documents that

---

**8.** The record reflects that Dynamic changed counsel in December 2005. When new counsel entered her appearance, she propounded discovery including interrogatories and a request for production of documents. The discovery was propounded the day before the discovery deadline, however, and therefore was not timely. Shan moved for a protective order; Dynamic did not oppose the motion and apparently agreed to withdraw its discovery requests. The motion for protective order then was withdrawn.

could be identified on the post-it notes as having been requested for copying, but did not go through the documents to determine whether any or some of them would fall into the general document categories described in the other post-it notes. Counsel for Shan again represented that, during the document production, he had asked the Dynamic representatives to copy the categories of documents later memorialized in his March 29 List and that they had agreed to do so, but then had failed to do so. Counsel for Dynamic repeated that the Dynamic representatives had attested to the contrary in their affidavits.

Without making any express factual findings, the court granted Shan's motion for sanctions. Then, addressing one by one each category of document on the March 29 List, it ruled that Dynamic would be precluded from introducing any documents in its defense or in its counterclaim of those categories of documents. (For example, the March 29 List requested "all documents related to Tiemost, LLC," and the court ruled that Dynamic could not introduce any such documents.)

### (b)

The procedure for discovery in civil cases is governed by subtitle 400 of Chapter 2 of the Maryland Rules. One discovery tool available to parties, by Rule 2–422, is a request for production of documents. That rule, entitled "Discovery of documents and property," states, in relevant part:

(a) **Scope.** Any party may serve one or more requests to any other party (1) as to items that are in the possession, custody, or control of the party upon whom the request is served, *to produce and permit the party making the request, or someone acting on the party's behalf, to inspect and copy any designated documents. . . .*

(b) **Request.** A request shall set forth the items to be inspected, either by individual item or by category, and shall describe each item and category with reasonable particularity. *The request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts.*

(c) **Response.** The party to whom a request is directed shall serve a written response within 30 days after service of the request.... *The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is refused, in which event the reasons for refusal shall be stated.* If the refusal relates to part of an item or category, the part shall be specified.

(d) **Production.** *A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.*

(Emphasis added.)

As originally adopted in 1984, Rule 2–422 was patterned after former Rule 419 and the 1980 version of Rule 34 of the Federal Rules of Civil Procedure. In *Pleasant v. Pleasant*, 97 Md.App. 711, 732, 632 A.2d 202 (1993), this Court held that, when there is no appellate decision in Maryland to assist in interpretation and application of Rule 2–422, we may look to the corresponding portion of Federal Rule 34 for guidance.

Rule 2–432 is entitled "Motions for failure to provide discovery." Subsection (a) allows a party to move for immediate sanctions under Rule 2–433(a) for certain failures of discovery, including "if a party fails to serve a response ... to a request for production of documents under Rule 2–422, after proper service." Subsection (b) of Rule 2–432 allows a "discovering party," upon reasonable notice to the other parties and persons affected, to move for an order compelling discovery if, among other things, "a party fails to comply with a request for production or inspection under Rule 2–422." Sanctions are governed by Rule 2–433. Subsection (a) of that rule allows the court, upon motion, to enter such orders with regard to certain failures of discovery as are just, including orders refusing to allow "the failing party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." These same sanctions may be imposed by the court against a party that

has failed to comply with an order compelling discovery. Rule 2–433(b).

### (c)

On January 31, 2006 Dynamic furnished Shan a written response to Shan's RPD. That response complied with subsection (c) of Rule 2–422, at least insofar as relevant to the issue in this appeal. For each category of document requested, except one (which is not at issue), Dynamic responded in writing, stating for each request either that no such documents existed or that the documents requested would be produced for inspection at Dynamic's office, at a mutually convenient date and time.[9]

As we have explained, one of Shan's arguments in support of its request that the court impose immediate sanctions against Dynamic was that Dynamic failed to comply with the court's February 2 Order directing it to provide discovery responses to Shan by February 17. This argument rests upon a flawed reading of Rule 2–422. Shan assumes that a "response" to an RPD is the same as a "production" of the requested documents. This is wrong. The rule makes plain at subsection (c) that a "response" to an RPD is a written document prepared by the discovery recipient and furnished to the party propounding discovery. Dynamic's written response to Shan's RPD was given to Shan on January 31. Therefore, even before the February 2 Order was issued, Dynamic had responded to the RPD. Accordingly, to the extent the circuit court imposed sanctions against Dynamic on the ground that Dynamic failed to abide by its February 2 Order, that was legal error.

In its RPD, Shan chose to request categories of documents, instead of particular documents. This is permitted by subsection (b) of Rule 2–422.[10] Also, as discussed above, the "pro-

---

9. As noted, Dynamic objected to one request, but that is not the subject of this appeal.

10. It is impossible to determine from the record whether Shan's RPD specified a "reasonable time, place, and manner of making the inspec-

duction" subsection of Rule 2–422 allows a party to whom an RPD is propounded to "produce [the documents for inspection] as they are kept in the usual course of business *or* ... [to] organize and label them to correspond with the categories in the request." Rule 2–422(d) (emphasis added).

The use of the word "or" connotes that the producing party has the initial choice to produce the requested documents in one of two ways: either as they are kept in the usual course of business or as organized and labeled to correspond to the categories of documents spelled out in the RPD. *See Walker v. Lindsey,* 65 Md.App. 402, 407, 500 A.2d 1061 (1985) (stating that "[ t] he word 'or' is a disjunctive conjunction which serves to establish a relationship of contrast or opposition."). *See also Doe v. District of Columbia,* 231 F.R.D. 27 (D.D.C.2005) (stating that the producing party was not required to label the documents pursuant to the categories in the propounding party's discovery request; it was sufficient to produce the documents as they were kept in the usual course of business); 8A Wright, Miller & Marcus, *Federal Practice and Procedure: Civil* § 2213 (2d ed. 1994) (stating that the word "or" in Rule 34(b) gives the producing party the initial choice to select between the two permissible modes of production).

In fact, on March 16, 2006, Dynamic "produced" the documents requested by Shan, within the meaning of subsection Rule 2–422(d), by making them available for inspection, as they were kept in the usual course of its business. There was no allegation by Shan, and no proof offered by it, that the documents Dynamic produced were not responsive to the RPD or were not produced as they were kept in the ordinary course of business. Thus, it also is clear that Dynamic did not fail to produce documents for inspection within the meaning of the term "production" in Rule 2–422(d), and hence there was no discovery failure in that sense. To the extent that the circuit court imposed sanctions against Dynamic for failing to produce documents, that also was legal error.

---

tion and performing related acts" because the record does not include a copy of the RPD.

Although unstated in its motion for sanctions, the true subject of Shan's dissatisfaction was Dynamic's perceived failure to *make copies of* the documents Shan's lawyer asked to have copied when he inspected them on March 16. Shan's complaint in this regard has been something of a moving target. At the hearing before the circuit court, Shan's lawyer represented that he had told the Dynamic representatives present on March 16 which documents he wanted copied, and they simply failed to act. In oral argument before this Court, counsel represented that he left *more* than the six post-it notes on the production table, notwithstanding the representations to the contrary in the affidavits filed by Dynamic in opposition to the motion for immediate sanctions, and that the post-it notes he left tracked the categories of documents he later enumerated in the March 29 List.

As noted above, subsection (a) of Rule 2–422 grants any party the right to serve upon another party one (or more) request "to produce and *permit the party making the request . . . to inspect and copy any designated documents . . . .*" (Emphasis added.) Dynamic produced for inspection the requested documents as they were kept in the usual course of its business and Shan's lawyer inspected the documents for the period of time he wished to. (Nothing in the record suggests that he asked for additional inspection time.) Subsection (b) of the rule requires the RPD to specify a reasonable time, place, and manner of "making inspection and performing the related acts."

Ordinarily, the timing, location, and manner of production is discussed and agreed upon between counsel, without the necessity of filing a motion. 7 *Moore's Federal Practice,* § 34.14[3] (3d ed. 2007). Very recently, in *Rodriguez v. Clarke,* 400 Md. 39, 926 A.2d 736 (2007), the Court of Appeals, observing that the element of good faith in dealings between counsel "is central to the entire discovery process," *id.* at 61, 926 A.2d at 749, 2007 WL 1558524 at **11–12 stated, in discussing the discovery tools used to secure information about expert witnesses, that "the logistics of [interrogatories and depositions] should be the subject of agreement, in order

to forestall a waste of time and resources on the part of both litigants and counsel." *Id.* at 57, 926 A.2d at 747, 2007 WL 1558524 at **9–10.

■ Copying documents is a "related act" within the meaning of Rule 2–422(c). Unless otherwise ordered, it is the responsibility of the requesting party, not the producing party, to pay the expense of making copies. *See Clever View Investments, Ltd. v. Oshatz*, 233 F.R.D. 393, 394 (S.D.N.Y.2006) (holding that producing party need only make requested documents available for inspection, and need not pay for copying costs); *7 Moore's Federal Practice, supra,* at § 34.14[5]. *See also* Wright, Miller & Marcus, *supra,* at § 2213 (footnote omitted) (stating, "[h]owever the documents are organized for production, the party who has made them available for inspection need not itself make copies for the use of the discovering party.").

■ In the case at bar, counsel for the parties discussed in advance the time, place, and manner that Dynamic's documents would be produced for inspection and for the "related act" of copying. They agreed that Shan would pay the copying charges (which, as explained above, is usual), and that Dynamic would undertake the physical task of making copies of the documents Shan designated for copying.

Probably because opposing counsel in civil cases usually are able to agree on something as basic as which documents produced for inspection the requesting party wishes to have copied, there is virtually no authority about disputes over the issue. *See Rodriguez v. Clarke, supra,* at 55–60, 926 A.2d at 746–48, 2007 WL 1558524 at **9–10; cf. *Federal Sav. & Loan Ins. Corp. v. Village Creek Joint Venture*, 130 F.R.D. 357, 360 (N.D.Tex.1989) (attributing the lack of authority on issue of method of inspection "to the fact that attorneys should and do ordinarily resolve such matters without judicial intervention").

What little authority there is suggests that the "related act" of copying documents that have been produced in response to an RPD is ministerial. *See Diapulse Corp. of America v. Curtis Pub. Co.*, 374 F.2d 442, 445 (2d Cir.1967) (concluding,

contrary to one party's contention, that there is not a "significant distinction between making 'copies' and 'photographs' [of documents], unless the former is restricted to quill and longhand, a construction we emphatically reject."). At the present time, with other than electronically stored documents, copying ordinarily is accomplished by placing a designated document in a machine that makes a copy of it. Usually, the producing party wishes to maintain possession or custody of its original documents and records, and therefore will take charge of the copying process, either by making the copies in-house or by arranging for copies to be made by a copying service.[11]

It is the requesting party's responsibility to determine which, if any, of the documents produced it wants copied and, if the copies are to be made by the producing party, to designate those documents. In the case at bar, for Shan to have succeeded in accomplishing the ministerial task of having all or some of the documents Dynamic produced copied, its attorney or other representative had to perform the equally ministerial task of physically marking, by page, notebook, or document pile or stack, the documents to be copied. Shan's counsel did that with respect to some documents; and copies of those documents were made and given to Shan's lawyer on April 12.

Otherwise, according to his own representations to this Court, Shan's lawyer left "copying" instructions on March 16 that were not a simple request that Dynamic perform the ministerial act of copying marked documents. Rather, the "copying" instructions sought to have Dynamic analyze, organize, and assess the significance *vel non* of the documents it already had produced for inspection, and to produce additional documents not included in Shan's RPD. These instructions sought action far exceeding the ordinary "related act" of copying designated papers that are part of an already-produced set of documents.

---

11. Indeed, in this case Dynamic used a copying service.

Once a party, in response to an RPD, has properly produced documents for inspection by furnishing them to the other party as they were kept in the usual course of business, the producing party is not required to further analyze, categorize, or attach meaning to the documents. Those tasks become one of the many that the requesting party must undertake as it conducts further discovery (for example, depositions of people with knowledge of the information in the documents), and as it engages in trial preparation. So too if documents produced in response to an RPD prompt an interest in propounding an additional RPD, the rules permit that; unlike the case with interrogatories, there is no limit, except for reasonableness, upon the number of requests for production that may be propounded. Here, of course, the scheduling order imposed its own limitation, by virtue of the discovery deadline, except to the extent that it was modified by the court upon request of the parties.

Dynamic made copies of the documents Shan marked with post-it notes that made plain which documents were to be copied. Thus, to the extent that Shan properly requested copies, in accordance with the parties' agreement, Dynamic complied with the "related act" request. The other "copying" instructions were not requests for the "related act" of copying. Regardless of the number of post-it notes left by Shan's counsel, to the extent they sought to have Dynamic sift through and analyze documents in order to determine which documents Shan's notes were referring to, and whether there were documents matching the descriptions in the notes, or to have Dynamic produce documents that were not requested in its RPD, Dynamic did not have an obligation, pursuant to Rule 2–422, to do so.[12]

---

12. Rule 2–431 provides that the court need not consider a discovery dispute unless the attorney seeking action has filed a certificate "describing the good faith attempts to discuss with the opposing attorney the resolution of the dispute and certifying that they are unable to reach agreement on the disputed issues." It further requires that the certifying attorney "include the date, time, and circumstances of each discussion or attempted discussion." *See Rodriguez v. Clarke, supra,* 400 Md.

**230**

The logistics of a requesting party obtaining copies of all or some of the documents a producing party has produced in response to an RPD should not be complicated and should not entail anything other than ministerial tasks. Shan simply could have requested that all documents produced be sent out for copying at its expense. If that would have been wasteful, Shan simply could have physically marked the documents it wished to have copied with post-it notes, paper clips, or the like. If Shan's lawyer did not have sufficient time to mark all of the documents he wanted when he inspected them on the afternoon of the document production, he could have made arrangements with Dynamic to return to its office to complete the process of marking documents for copying. By doing any of these straightforward tasks, Shan easily could have obtained well before trial copies of those documents produced by Dynamic that it wanted copied.

Accordingly, if the circuit court found that Dynamic violated Rule 2–422 by failing to perform the "related act" of copying documents, by not furnishing to Shan copies of documents as

at 63, 926 A.2d at 750, 2007 WL 1558524 at **11–12 (discussing Rule 2–431 and stating that the Maryland discovery rules mandate good faith efforts by counsel in the discovery process).

Counsel for Shan appended a Rule 2–431 certificate to his motion for immediate sanctions representing that he made good faith efforts to discuss and resolve the discovery dispute with Dynamic's attorney, as set forth in paragraphs 7 through 14 of the motion itself. Yet, paragraphs 7 through 12 do not relate to the copying dispute at all, and paragraph 13 merely states the substance of the parties' agreement about copying. Paragraph 14 states that, when counsel did not receive any copied documents or communications from Dynamic's counsel about the documents to be copied, he sent the March 29, 2006 letter and attached list. The letter and list were appended to the motion for immediate sanctions.

The March 29, 2006 letter was hardly a good faith effort to discuss with counsel for Dynamic the dispute about which documents were to be copied. The letter demanded that documents that had not been individually marked be copied, when it was unclear which documents Shan wished to have copied; and it further demanded that documents never requested in the RPD be produced for inspection, all within two days. By the March 29, 2006 letter, counsel took a simple, logistical copying issue, which should have been easily resolved, and made it appear to the court as if it were a serious, substantive discovery failure, which it was not.

described in Shan's post-it notes, however many there were (other than those stating "all" or the like, which were copied) or in the March 29 List, that too was legal error.

In summary, on the facts before the circuit court when it ruled on Shan's motion for immediate sanctions, there was no discovery violation committed by Dynamic.[13]  The circuit court erred in ruling that there was.  Necessarily, it was an abuse of discretion for the circuit court to impose sanctions against Dynamic for a discovery violation it did not commit.  There is no dispute that the documents the court precluded Dynamic from using as evidence at trial were integral to its defense of Shan's claim and to its counterclaim against Shan; therefore, the court's error was prejudicial.

**JUDGMENTS REVERSED.  CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.  COSTS TO BE PAID BY THE APPELLEE.**

---

**13.** Dynamic initially violated Rule 2–422 by not filing its response within 30 days, but that was not the ground for the sanctions that were imposed.